**BIODIVERSITY LEGAL FOUNDATION, Plaintiff,**

v.

**Bruce BABBITT, Secretary of the Interior, et al., Defendants.**

**No. Civ.A. 98–2828 (JR).**

United States District Court, District of Columbia.

Aug. 27, 1999.

James B. Dougherty, Washington, DC, James J. Tutchton, Earthlaw, Denver, CO, for plaintiff.

Suzanne C. Nyland, Assistant U.S. Attorney, Washington, DC, for defendants.

## MEMORANDUM

ROBERTSON, District Judge.

The Endangered Species Act, 16 U.S.C. § 1531 *et seq.*, provides that citizens may petition for the inclusion of species on the endangered list and requires the Fish and Wildlife Service to make preliminary findings on such petitions to "the maximum extent practicable" within 90 days. Plaintiff, a nonprofit organization concerned with the preservation of plants, animals, and ecosystems, seeks a declaratory judgment that an FWS delay of nearly two years in making the required preliminary finding on its petition to list the Baird's Sparrow was unlawful.

The pending cross-motions for summary judgment present the question of how much license FWS has under the "maximum extent practicable" language of the statute—and under *Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and its progeny—to delay issuing its preliminary findings. This memorandum sets forth the reasons for the court's conclusions that plaintiff has standing, that FWS did not moot this case when it finally issued its preliminary finding on the Baird's Sparrow, and that it was unlawful for FWS to wait nearly two years before issuing its preliminary finding. FWS may appropriately take more than 90 days to issue preliminary findings if it is acting in compliance with its Listing Priority Guidance, *see Biodiversity Legal Foundation v. Babbitt,* 146 F.3d 1249 (10th Cir.1998), but it may not simply ignore the 90-day deadline in order to avoid starting the clock on another statutory deadline.

## FACTS

Plaintiff Biodiversity Legal Foundation monitors the Fish and Wildlife Service's stewardship of its obligations under the Endangered Species Act. It has filed a number of suits challenging FWS delays in responding to citizen petitions. Its citizen petition in this case, to list the Baird's Sparrow, a songbird residing in the Dakotas, Minnesota, Montana, and Canada, was filed on June 26, 1997. The ESA requires that the Secretary of the Interior "[t]o the maximum extent practicable, within 90 days after receiving the petition of an interested person ... make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). This statutory duty has been delegated to

the Fish and Wildlife Service by 50 C.F.R. § 402.01(b).

The FWS did not issue a finding within 90 days. On October 13 and October 27, 1997, 107 and 121 days after filing its petition, plaintiff gave formal notice to FWS that it was in violation of the Endangered Species Act and that it intended to sue.[1] FWS did not respond, and plaintiff did not sue. On March 19, 1998, nearly nine months after filing its petition, plaintiff asked FWS for information on its status. FWS replied, on April 6, 1998, that it intended to prepare its 90–day finding by June 29, 1998. June 29 came and went without any FWS finding—although, unbeknownst to plaintiff, the Migratory Bird Office did make a recommendation in June 1998 that the Baird's Sparrow not be listed as endangered, and a field office of FWS did prepare a *draft* negative finding, also in June 1998, on the basis of that recommendation.

Plaintiff filed this action on November 20, 1998. On May 21, 1999, the day FWS' written discovery responses were due, FWS published its 90–day finding that the petition did not "present substantial information indicating that listing of this species as threatened may be warranted." Def.Exh. 2. Plaintiff moved for summary judgment on June 21, 1999, asserting that FWS had not complied with the statutory command to issue findings within 90 days "to the maximum extent practicable." Defendants moved for summary judgment on July 21, 1999, asserting that the case was now moot and that, in any event, it had complied with the statute. Oral argument was heard on July 30, 1999.

## ANALYSIS

■ 1. *Standing.* Defendants have not challenged the standing of plaintiff Biodiversity Legal Foundation to maintain this action, nor could they successfully do so. The elements of both constitutional and prudential standing are satisfied by Biodiversity Legal Foundation's allegations that the law has been violated and that its status and mission make it an appropriate plaintiff. *See, e.g., Lujan v. Defenders of Wildlife,* 504 U.S. 555, 562–63, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ("the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing"); *Animal Legal Defense Fund v. Glickman,* 154 F.3d 426, 433 (D.C.Cir. 1998) (individual plaintiff establishes injury in fact merely by "seeing with his own eyes the particular animals whose condition caused him aesthetic injury").

■ 2. *Mootness.* Plaintiff's complaint demanded an injunction to compel FWS to rule on the Baird's Sparrow petition and a declaratory judgment that the FWS delay was unlawful. The demand for injunctive relief is now unquestionably moot, FWS having issued its ruling. As for the demand for declaratory relief, however, plaintiff asserts that FWS "routinely ceases its offending conduct before any litigation can be resolved." Pl.Mem. at 20. This case fits easily within the "capable of repetition yet evading review" exception to the mootness doctrine, because "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Clarke v. United States,* 915 F.2d 699, 704 (D.C.Cir.1990) (quotation and citation omitted).

3. *Merits.* Section 4 of the Endangered Species Act provides in relevant part as follows:

"(A) *To the maximum extent practicable,* within 90 days of receiving the petition of an interested person ... the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petition may be warranted....

---

**1.** The formal notice letters were sent pursuant to 15 U.S.C. § 1540(g)(2).

(B) Within 12 months after receiving a petition that is found under subparagraph (A) to present substantial information indicating that the petitioned action may be warranted, the Secretary shall make one of the following findings: (i) the petitioned action is not warranted ... (ii) the petitioned action is warranted ... (iii) the petitioned actions is warranted but [precluded by other listing activity]."

16 U.S.C. § 1533(b)(3) (emphasis added).

Congress obviously did not intend the 90-day period for preliminary findings to be inflexible. It recognized that the Secretary would need to establish priorities, and indeed it required that the Secretary establish guidelines that would include "a ranking system to assist in the identification of species that should receive priority review...." 16 U.S.C. § 1533(h)(3). In compliance with that requirement, the Secretary published a "Listing Priority Guidance." Last year, in *Biodiversity Legal Foundation v. Babbitt*, 146 F.3d 1249, 1256 (10th Cir.1998), the Tenth Circuit held FWS' implementation of and adherence to the Listing Priority Guidance to have been based on a reasonable construction of the statute and entitled to deference under *Chevron.* That decision is persuasive.

This case, however, presents issues that were not resolved by the Tenth Circuit decision, including the factual question whether FWS was actually adhering to the Listing Priority Guidance. FWS' own submission suggests that FWS was not using all of the 23 months between the filing of plaintiff's petition and the issuance of its ruling to deal with other species more threatened than the Baird's Sparrow.[2] It appears that, at least from June 1998, when a FWS field office prepared a draft negative finding, until May 1999,

when FWS publicly announced its finding, FWS was not working on higher priority endangered species petitions. Instead, FWS was working on NEPA document reviews, Clean Water Act obligations, federal water project activities, and responding to congressional inquiries. *See* Def.'s Statement of Material Facts ¶ 25.

█   And plaintiff in this case seeks to present the question, not decided by the Tenth Circuit, whether the 12-month deadline for issuance of final decisions on citizen petitions is as flexible as the 90-day deadline for preliminary findings. The statute requires that the Secretary find the action requested by a petition to be (i) not warranted, (ii) warranted, or (iii) warranted but precluded by other regulatory activity, "within 12-months after receiving a petition that is found under subparagraph (A) to present substantial information indicating that the petitioned action may be warranted." The language is clumsy, but not ambiguous. It does not permit the Secretary to take 23 months to make a preliminary finding and *then* 12 months to make the final determination. The 12 month period runs from the receipt of the petition, not from the preliminary finding.

█   In this case, of course, because the Secretary's subparagraph (A) finding was negative, subparagraph's (B) 12-month deadline was not triggered. But it appears from an internal FWS e-mail that it was FWS practice, at least in FWS Region 6, which was responsible for the Baird's Sparrow petition, to *ignore* citizen petitions, precisely in order to avoid starting the 12-month clock on subparagraph (B) findings if the subparagraph (A) finding should be affirmative:

imminent proposals *to list species subject to a greater degree of threat* that would make allocation of resources to such petition unwise." H.R.Conf.Rep. No. 97–835 at 2 (1982) *reprinted in* 1982 U.S.C.C.A.N. 2860, 2862 (emphasis added).

---

**2.** The "maximum extent practicable" language of the statute is not a license to pursue any and all other legitimate priorities of the Department of the Interior. "The phrase is not intended to allow the Secretary to delay commencing the rulemaking process *for any reason other than* the existence of pending or

"R6 [FWS' Region 6, responsible for the Baird's Sparrow petition] up till now has ignored re[s]ponding to petitions . . . . It turns out R6 is the only region that ignores petitions . . . . By law, within 90 days of receiving a petition, FWS should make a finding (90–day finding) as to whether the petition presents enuf info to warrant our looking into the matter further. . . . *The 90–day finding is not a tremendous undertaking, but it starts the clock on the 12–mo finding, which is, hence the reason R6 has not started the process for several petitioned species.* The petitions we have ignored, that I am aware of, are Baird's sparrow and westslope cutthroat trout. . . . "

Def.'s Mem., Attach. 6 (emphasis added). That e-mail, which was placed into the record by the government, is an admission that FWS was not in fact trying "to the maximum extent practicable" to meet the 90–day deadline for responding to plaintiff's Baird's Sparrow petition. It was instead ignoring the petition, in a deliberate—and unlawful—effort to avoid triggering the 12–month deadline.

Americans understand that they must wait for their government to act. Those who request documents under the Freedom of Information Act have to take their place in line, for example, *see Open America v. Watergate Special Prosecution Force,* 547 F.2d 605 (D.C.Cir.1976). Everyone has a story about agency delays, and indeed it does not become the judiciary to criticize other agencies or branches for not responding quickly enough to citizen petitions. But citizens should at least expect that their government is working on their concerns within the limits of their manpower and funding, and not simply throwing their petitions onto "hold" piles so that they will not be pressed to decide them within a statutory time limit.

An appropriate order accompanies this memorandum.

***ORDER***

Upon a review of the record and for the reasons stated in an accompanying memorandum, it is this 27th day of August 1999

ORDERED that defendants' motion for summary judgment [# 12] is **denied.** It is

FURTHER ORDERED that plaintiff's motion for summary judgment [# 11] is **granted in part.** And it is

ORDERED and DECREED that the Fish and Wildlife Service's issuance of its preliminary finding upon a citizen's petition to list the Baird's Sparrow as endangered was not issued "to the maximum extent practicable, within 90 days" and was unreasonably and unlawfully delayed in violation of the Endangered Species Act, 16 U.S.C. § 1533(b)(3)(A).